UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STACEY A. LOWE,

     Plaintiff,                        Case No. 2:20-cv-11216

                                     District Judge Linda V. Parker

v.                               Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDTION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.     Introduction

This is a social security case.  Plaintiff Stacey A. Lowe brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security (Commissioner) denying her application for Supplemental Security Income (SSI) under the Social Security Act (the Act).  Both parties have filed summary judgment motions (ECF Nos. 15, 16), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, substantial evidence supports the Administrative Law Judge's (ALJ) conclusion that Lowe is not disabled under the

1

Act.  Accordingly, it is RECOMMENDED that the Commissioner's Motion for Summary Judgment (ECF No. 16) be GRANTED, Lowe's Motion for Summary Judgment (ECF No. 15) be DENIED, and that the ALJ's decision be AFFIRMED.

## II.    Background

### A. Procedural History

Lowe was 41 years old at the time of her alleged date of onset of May 1, 2016.  (ECF No. 11, PageID.178).  She worked as a lunch aid from September 2009, until her alleged date of onset.  (*Id*., PageID.80, 124).  She alleged disability due to back pain, left leg pain, and left hip pain.  (*Id*., PageID.117).

After Lowe's SSI application was denied at the initial level on September 13, 2017 (*Id*., PageID.126), she timely requested an administrative hearing, which was held on November 16, 2018, before the ALJ.  (*Id*., PageID.76-115).  Lowe testified at the hearing, as did a vocational expert (VE).  (*Id*.).

Lowe testified that she dropped out of school when she was 16 years old. (*Id*., PageID.83).  She could do basic reading, writing, and math.  (*Id*.).  Her work experience was limited to being a lunch aid.[1]  (*Id*., PageID.83-84).  Lowe could no longer perform that, or any other job, because she could not sit or stand "for too long."  (*Id*., PageID.84).  She needed "freedom to rest," and explained that she

---

[1] Lowe's work experience did not meet the standard to be qualified as relevant work.

"[slept] most of the day." (*Id.*).  She required the use of a cane to keep her balance. (*Id.*).  The combination of her medication, Zoloft and Norco, made her "very, very tired." (*Id.*, PageID.84-85).  If Lowe did not take Norco she really suffered from pain. (*Id.*).  Lowe needed to stand after about 15 minutes of sitting and sit after about 10 minutes of walking. (*Id.*, PageID.89).  She was unable to stand still without difficulty. (*Id.*).

Lowe woke up at 6:15 a.m. to drive her son to school, which was located approximately half of a mile from their home. (*Id.*, PageID.86).  They left for school around 7:27 a.m. (*Id.*).  Upon arriving home, Lowe watched television until she fell asleep around 9:00 a.m. (*Id.*, PageID.87).  Some days Lowe would wake up around 11:30 a.m., on other days she would sleep all day. (*Id.*).  If Lowe woke up, she would continue watching television or talk to her sister if she came to visit. (*Id.*).  Lowe also attended weekly therapy sessions. (*Id.*, PageID.87-88).  Lowe's husband did most of the grocery shopping because she was unable to lift items such as pop. (*Id.*, PageID.89-90).

On January 24, 2019, the ALJ issued a written decision finding that Lowe was not disabled. (*Id.*, PageID.57-70).  On March 20, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.*, PageID.46-48).  Lowe timely filed for judicial review of the final decision. (ECF No. 1).

## B. Medical Evidence

On June 13, 2016, Lowe presented to Great Lakes Urgent Care of Eastpointe complaining of left leg and lower back pain.  (ECF No. 11, PageID.255-256).  On July 14, 2016, an x-ray of Lowe's left hip and pelvis was performed, which found "[n]o significant abnormalities."  (*Id*., PageID.252).  On the same date, an x-ray of Low's lumbosacral spine indicated that there was "[s]traightening of the thoracolumbar spine" and "[s]mall vertebral spurs at L5."  (*Id*., PageID.253).  However, there was no evidence of "acute fracture or dislocation."  (*Id*.).

On May 31, 2017, Lowe presented to Dr. Charles Loredo to establish care.  (*Id*., PageID.291-292).  She complained of back pain that had been ongoing for several months and been getting worse.  (*Id*., PageID.291).  The pain also radiated to her lower left leg.  (*Id*.).  Lowe reported that taking Norco helped alleviate the pain for "a short period of time."  (*Id*.).  She was unable to afford physical therapy.  (*Id*.).

On June 7, 2017, an MRI of Lowe's lumbar spine revealed "[m]oderate degenerative changes in the lower lumbar spine," but "no spinal stenosis."  (*Id*., PageID.264, 317).  It further revealed "[m]ild to moderate neural foramen narrowing bilaterally at L4-L5 effacing exiting L4 nerve roots.  Very small right lateral disc herniation further narrow[ed] rights neural foramen."  (*Id*.).  Finally, "[a]t L5-S1, there [was] marked left and moderate right neural foramen narrowing

4

effacing exiting bilateral L5 nerve roots.  There [was] a small to moderate left lateral/intraforaminal disc osteophyte complex at L5-S1 which further narrow[ed] the left neural foramen and further efface[d] exiting left L6."  (*Id*., PageID.318).

On July 20, 2017, Lowe returned to Dr. Loredo complaining of severe back pain.  (*Id*., PageID.293).  Lowe requested a refill of Gabapentin and Norco to which Dr. Loredo agreed.  (*Id*.).  On August 15, 2017, Lowe had a visit with Haley Pope, D.O., and requested a refill of Norco.  (*Id*., PageID.295).

On August 25, 2017, Lasmi Manyam, M.D., completed an independent medical examination of Lowe.  (*Id*., PageID.265-267).  Dr. Manyam observed Lowe walk into the examination room with the help of a cane and "mild limping." (*Id*., PageID.266).  Dr. Manyam's impression was as follows: "Lower back pain, probably arthritis or rule out prolapsed disc.  During examination, no radiating pain, but the claimant with a history of on and off radiating pain to the left lower extremity and left groin and the lower leg gives way while walking."  (*Id*., PageID.267).  The medical source statement provided, "[b]ased on today's medical examination, the claimant's fine and gross dexterity are intact, dominant hand is right.  There is no problem using the extremities, but there is limitation of long standing, sitting, carrying or walking due to the lower back pain and with radiation to the left groin and left lower extremity."  (*Id*.).

On September 13, 2017, and November 6, 2017, Lowe had medication check appointments with Dr. Pope where she requested refills of Norco. (*Id.*, PageID.298, 300). At the November 6, 2017 appointment, Lowe rated her lower back pain at a nine or ten out of ten before taking Norco, and a four out of ten after taking Norco. (*Id.*, PageID.300).

On February 5, 2018, Lowe presented to Dr. Pope complaining, in part, of chronic lower back pain that had been ongoing for several years. (*Id.*, PageID.275-277). Lowe requested a refill of Norco. (*Id.*). Before taking Norco, Lowe rated her pain an eight out of ten. (*Id.*). After taking Norco, Lowe rated her pain a four or five out of ten. (*Id.*). Lowe also expressed interest in restarting physical therapy for her back pain. (*Id.*, PageID.276). On May 4, 2018, Lowe returned to Dr. Pope to discuss her lower back pain. (*Id.*, PageID.281). She rated her pain as a seven or eight out of ten before taking Norco, and a three or four out of ten after taking Norco. (*Id.*). On August 3, 2018, Lowe had a return visit with Dr. Pope to discuss her lower back pain. (*Id.*, PageID.287). She rated her pain as a seven out of ten before taking Norco, and a three out of ten after taking Norco. (*Id.*).

On August 22, 2018, Lowe had a visit with Dr. Pope where she complained of joint pain that had been ongoing for several months. (*Id.*, PageID.289). The level of joint pain varied and taking medications, such as Norco, helped alleviate

the pain.  (*Id*.).  Lowe also reported fatigue and "waking up stiff."  (*Id*.).  Dr. Pope

indicated that she would check for autoimmune disorders.  (*Id*., PageID.290).

On November 5, 2018, Dr. Pope examined Lowe and completed a physical

capacities evaluation.  (*Id*., PageID.345-347).  Dr. Pope explained that she began

treating Lowe in June of 2017, and had diagnosed her with "chronic back pain"

and the test used to arrive at the diagnosis was an MRI.  (*Id*., PageID.345).  She

determined that Lowe could only sit or stand/walk for less than an hour at a time or

for a combined total of no more than two hours and that Lowe could occasionally

lift up to five pounds.  (*Id*.).  Of note was Dr. Pope's findings that Lowe

"require[d] complete freedom to rest frequently without restriction" and would

miss four or more days of work each month.  (*Id*., PageID.346).  Dr. Pope also

stated, "[p]atient needs to elevate left leg chest high.  Medication makes patient

tired.  Patient sleeps with pillows under legs.  Cannot sit for long period of time

without having to walk to relieve back, hip, leg pain."  (*Id*., PageID.347).

III.    Framework for Disability Determinations (the Five Steps)

Under the Act, SSI is available only for those who have a

"disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

7

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D.

Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the

claimant throughout the first four steps. . . .  If the analysis reaches the fifth step

without a finding that claimant is not disabled, the burden transfers to the

[Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Lowe was not disabled under the Act. At Step One, the ALJ found that Lowe had not engaged in substantial gainful activity since May 22, 2017 (the application date). (ECF No. 11, PageID.62). At Step Two, the ALJ found that she had the severe impairments of degenerative disc disease and major depressive disorder. (*Id.*) At Step Three, the ALJ found that Lowe's impairments, whether considered alone or in combination did not meet or medically equal a listed impairment. (*Id.*, PageID.63).

The ALJ then assessed Lowe's residual functional capacity (RFC), concluding that she was capable of performing light work with the following additional limitations:

- She must be able to change [her] position between sitting and standing every 15 minutes or more is [sic] needed;
- She is limited to lifting and carrying only up to five pounds;
- She must be able to elevate her legs on a stool 15 inches high while seated;
- She may occasionally climb stairs, but can never climb ladders, ropes, or scaffolds;
- She may occasionally balance and stoop, but may never kneel, crouch, or crawl;
- She requires a cane for ambulation; and
- She must avoid dangerous machinery and unprotected heights is limited to simple and routine tasks.

(*Id.*, PageID.64-65).

At Step Four, the ALJ found that Lowe had no past relevant work.  (*Id.*, PageID.68).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Lowe could perform the jobs of information clerk (80,000 jobs nationally), inspector (40,000 jobs nationally), and hand packager (60,000 jobs nationally).  (*Id.*, PageID.69).  As a result, the ALJ concluded that Lowe was not disabled under the Act.  (*Id.*).

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (same).

10

An ALJ's factual findings must be supported by "substantial evidence." 42

U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the

judiciary's ability to review decisions by administrative agencies, but it does not

grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of Soc.*

*Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . .

. presupposes that there is a zone of choice within which the decisionmakers can go

either way, without interference by the courts.") (quoting *Blakley v. Comm'r of*

*Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are

therefore subject to multi-tiered review, but those findings are conclusive unless

the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The

Court must " 'take into account whatever in the record fairly detracts from [the]

weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395

(6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (internal quotations omitted).

## V.    Analysis

Lowe presents two arguments in seeking summary judgment.  First, she argues that the ALJ failed to properly apply the legal standard for assessing medical opinion evidence in this case and did not meet the minimum articulation requirements under 20 C.F.R. § 416.920c.  Second, she argues that the RFC finding for simple, routine work did not adequately account for her documented limitations in concentration, persistence, and pace.  The Commissioner responds that the ALJ appropriately articulated how she considered the relevant medical opinions and that substantial evidence supported the ALJ's finding that Lowe could perform simple and routine tasks despite her moderate limitation in concentration, persistence, and pace.

## A. Medical Opinion Evidence

Lowe argues that the ALJ applied the incorrect legal standard in this case because she afforded evidentiary weight to each medical opinion in the record and also failed to apply the new articulation requirements under 20 C.F.R. § 416.920c.

The Social Security Administration (SSA) recently revised their medical evidence rules. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (Mar. 27, 2017). Under the old rules, an ALJ had to give the medical opinion of a claimant's treating physician controlling weight as long as it "[was] well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record (the "treating physician rule"). 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). However, for claims filed on or after March 27, 2017, the ALJ must now articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ evaluates the persuasiveness of the medical opinions and prior administrative medical findings by utilizing the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how she considered these factors in her decision. 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  "[T]he appropriate level of articulation will necessarily depend on the unique circumstances of each claim."  82 Fed. Reg. at 5854.  Furthermore, "a medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion."  *Id.*

### 1. Weight of the Medical Opinions

As a preliminary matter, the undersigned notes that much of Lowe's argument relies on the fact that the ALJ described the persuasiveness of the medical opinions in this case using the term "weight."  For example, after considering the August 2017 assessment of a consultative medical examiner, Dr. Manyam, the ALJ stated, "Overall, this opinion is consistent with the medical evidence of record, and thus is given a significant amount of weight."  (ECF No. 11, PageID.67).  Lowe argues that by affording a weight to the medical opinions that the ALJ failed to conform with 20 C.F.R. 416.920c(a), which states "we will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  However, just because the ALJ could not give a specific evidentiary weight to certain medical opinions does not mean she could not express the persuasiveness of the varied medical opinions using the term "weight."

The language in 20 C.F.R. 416.920c(a) refers to the previous rule which

"accord[ed] presumptively controlling weight to an acceptable treating source. . . ."

*Cavanaugh v. Saul*, No. 20-10034, 2021 WL 1556753, * (E.D. Mich. Mar. 5,

2021), *report and recommendation adopted*, 2021 WL 1169745 (E.D. Mich. Mar.

29, 2021).  Unlike under the previous rule, "for claims made on or after March 27,

2017, the ALJ will *weigh* both treating and non-treating medical evaluations based

on how well they are supported by the remainder of the record."  *Id*. (citing 20

C.F.R. §§ 404.1520c, 416.920c) (emphasis added).  Here, the ALJ did precisely

what the new rules required; she weighed the medical opinions based on how well

those opinions were supported by the record.  Thus, the ALJ did not err when she

afforded a weight to the various medical opinions in the record.

## 2. Articulation Standard

The ALJ considered both the opinions of Dr. Manyam and Dr. Pope and met

the articulation requirement when discussing the opinions.

Dr. Manyam examined Lowe on August 25, 2017, and prepared a written

report.  (ECF No. 11, PageID.265).  In the report, Dr. Manyam notes that Lowe

was able to walk into the examination room with the help of a cane and "mild

limping."  (*Id*., PageID.266).  Her impression was as follows: "Lower back pain,

probably arthritis or rule out prolapsed disc.  During examination, no radiating

pain, but the claimant with a history of on and off radiating pain to the left lower

extremity and left groin and the lower leg gives way while walking." (*Id.*, PageID.267). The medical source statement provided, "[b]ased on today's medical examination, the claimant's fine and gross dexterity are intact, dominant hand is right. There is no problem using the extremities, but there is limitation of long standing, sitting, carrying or walking due to the lower back pain and with radiation to the left groin and left lower extremity." (*Id.*). After summarizing the August 25, 2017 report, the ALJ noted, "[o]verall, this opinion is consistent with the medical evidence of record, and thus is given a significant amount of weight." (*Id.*, PageID.67).

Lowe faults the ALJ for purportedly not discussing the supportability and consistency for Dr. Manyam's conclusion that Lowe did not need a cane. However, the ALJ clearly disagreed with this conclusion as she found that Lowe did need a cane for ambulation and also that Lowe could not "maintain stationary positions." (*Id.*, PageID.65, 68). The ALJ's findings themselves demonstrate how she resolved the supposed factual questions in Dr. Manyam's report. Similarly, the ALJ explicitly considered the prescription for a cane and weighed it against Dr. Manyam's opinion. The ALJ, after weighing these two pieces of evidence, decided that Lowe did in fact need a cane for ambulation as evidenced by the RFC.

Lowe also faults the ALJ for not including in her RFC finding that Lowe needed a cane to stand in addition to her need for a cane for ambulation. However,

Lowe only points to her own statement in a SSA function report to support this claim.  In that report, Lowe stated she used a prescribed cane "every day to assit [sic] with pain and unbalancing."  (*Id*., PageID.218).  This statement is ambiguous at best.  Lowe could have meant that she uses her cane to help her with the "unbalancing" she experiences while stationary or the "unbalancing" she experiences when she walks.  Accordingly, this statement alone far from requires the ALJ to include in the RFC that Lowe requires a cane to stand.

Finally, Lowe complains that Dr. Manyam did not have any imaging reports when she examined Lowe.  However, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record."  *Helm v. Comm'r of Soc. Sec.*, 405 Fed. App'x 997, 1002 (6th Cir. 2011) (quoting Soc. Sec. Ruling 96-6p, 1996 WL 374180, at \*2).  Additionally, Lowe does not explain how the lack of imaging reports affected Dr. Manyam's report.  Furthermore, the lumbar spine MRI from July of 2017 (*Id*., PageID.266), which showed a herniated disc, foraminal narrowing that effaced several nerve roots, degenerative changes, and a bone spur (osteophyte), (*Id*., PageID.317-18), was consistent with Dr. Manyam's conclusions of a possible prolapsed disc, radiating pain from the lower back to the left groin and lower extremity, and probable arthritis (*Id*., PageID.267).  Accordingly, the MRI does not

17

contradict Dr. Maynam's opinions or demonstrate how the ALJ's finding that her opinions were consistent with the evidence was incorrect.

Dr. Pope examined Lowe on November 5, 2018, and prepared a written report. (*Id.*, PageID.345-347). Dr. Pope had been treating Lowe since June of 2017, and had diagnosed her with "chronic back pain," in part, because of an MRI. (*Id.*, PageID.345). She determined that Lowe could only sit or stand/walk for less than an hour at a time or for a combined total of no more than two hours. (*Id.*). She also determined that Lowe could occasionally lift up to five pounds. (*Id.*). Notably, Dr. Pope found that Lowe "require[d] complete freedom to rest frequently without restriction" and would miss four or more days of work each month. (*Id.*, PageID.346). Dr. Pope also stated, "[p]atient needs to elevate left leg chest high. Medication makes patient tired. Patient sleeps with pillows under legs. Cannot sit for long period of time without having to walk to relieve back, hip, leg pain." (*Id.*, PageID.347). After summarizing the November 5, 2018 report, the ALJ noted, "This opinion is given little weight overall because some of the limitations are not proportional or supported by the medical evidence in the record. For instance, Dr. Pope's finding that [Lowe] needs to elevate her legs chest height is not supported or explained." (*Id.*, PageID.67-68).

As a preliminary matter, the undersigned notes that Dr. Pope's report was a form report. Such a form report is " 'weak evidence at best.' " *Hernandez v.*

18

*Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).  "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings . . . .' " *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (quoting *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011)); *see also Smith v. Comm'r of Soc. Sec.*, No. 13-12759, 2015 WL 899207, at *15 (E.D. Mich. Mar. 3, 2015) (citing cases); *Ashley v. Comm'r of Soc. Sec.*, No. 1:12-cv-1287, 2014 WL 1052357, at *8 n. 6 (W.D. Mich. Mar. 19, 2014) (citing cases). Additionally, Dr. Pope's opinion regarding the number of absences Lowe would have each month is not considered a medical opinion under the regulations.  *See, e.g., Murray v. Comm'r of Soc. Sec.*, No. 1:10-cv-297, 2011 WL 4346473, at *7 (W.D. Mich. Aug. 25, 2011) ("A treating physician's estimate of how often a patient who is not working would likely be absent from work if [s]he had a job is not a medical opinion, and it is not entitled to any particular weight."); *Valdes v. Comm'r of Soc. Sec.*, No. 1:08-cv-872, 2010 WL 911181, at *8 (W.D. Mich. Mar. 12, 2011) ("A treating physician's estimate of how often a patient who is not working would likely be absent from work if she had a job . . . is not a medical opinion, and it is not entitled to any particular weight, especially in cases such as

this, where the doctor's statement provides no explanation regarding how the conclusion was reached, or any reference to the specific, objective medical evidence supporting it.").

Lowe argues that, when discounting Dr. Pope's report, the ALJ failed to discuss the MRI. However, in the paragraph immediately following the ALJ's discussion of Dr. Pope's report, the ALJ refers to the MRI and explains that it, and other medical evidence, "supports limiting [Lowe] to light exertion." (*Id.*, PageID.68). Lowe also expresses confusion about why the ALJ discounted Dr. Pope's conclusion that Lowe needed to elevate her left leg to chest level, but then included leg elevation in the RFC. However, even though the ALJ found that Lowe did not need to elevate her leg to chest level, she clearly partially credited Dr. Pope's opinion that some elevation was necessary along with Lowe's hearing testimony that she elevated her leg when sitting at home. (*Id.*, PageID.65).

Lowe also relies on *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), to argue that the ALJ's conclusion is fatally flawed because she failed to cite to the record when finding that Dr. Pope's report was inconsistent with the record. In *Gayheart*, the Sixth Circuit remanded because the ALJ failed to identify the substantial evidence that was inconsistent with a treating physician's opinions. *Id.* at 377. First, the portion of *Gayheart* that Lowe relies upon involves the application of the treating physician rule, which, as explained above, is not

20

applicable in this case as it was filed after March 27, 2017.  For that reason alone, it is not clear whether *Gayheart* applies to this case.  However, even assuming that *Gayheart* does apply, the ALJ in this case did identify the substantial evidence that was inconsistent with Dr. Pope's report.  For example, the ALJ relied on Dr. Manyam's report, which contradicted the extreme restrictions that Dr. Pope opined were necessary.  Therefore, to the extent that *Gayheart* offers guiding principles in this case, they were followed.

Ultimately, "because the ALJ's conclusion that [medical providers'] opinions were not consistent and not well-supported was reasonably drawn from the record, the ALJ's conclusion fell within the Commissioner's 'zone of choice.' And, even if a preponderance of the evidence might have supported a different conclusion, this court is not permitted to second-guess the ALJ's decision when substantial evidence supported it." *Serowski v. Comm'r of Soc. Sec.*, No. 1:19-CV-2761, 2020 WL 6383187, at *12 (N.D. Ohio Oct. 30, 2020) (citations omitted). Under the new regulations, the ALJ was required to articulate "how persuasive [she] [found] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 416.920c(b).  She was not required to abide by the treating physician rule and defer to Dr. Pope's opinion. Overall, the ALJ's opinion adequately addressed both the supportability and consistency factors listed in the regulations, and her decision should be affirmed.

B. Residual Functional Capacity

Next, Lowe argues that although the ALJ found that she had moderate limitations in concentration, persistence, and pace, the ALJ failed to account for these limitations when crafting the RFC.  The RFC merely limited Lowe to performing "simple and routine tasks" without including any additional limitations.

"A claimant's RFC is an assessment of 'the most [a claimant] can still do despite [his] limitations.' " *Barton v. Comm'r of Soc. Sec.*, No. 2:20-cv-2182, 2021 WL 1380258, *4 (S.D. Ohio Mar. 25, 2021), *report and recommendation adopted*, 2021 WL 1378983 (S.D. Ohio Apr. 12, 2021) (quoting 20 C.F.R. § 416.945(a)(1)).  "A claimant's RFC assessment must be based on all the relevant evidence in a case file." *Barton*, at *4 (citing 20 C.F.R. § 416.945(a)(1)).

The ALJ found that Lowe had "a moderate limitation" "[w]ith regard to concentrating, persisting, or maintaining pace" when evaluating whether her conditions equaled the severity of one of the listed impairments.  (ECF No. 11, PageID.64).  In the RFC, the ALJ restricted Lowe to light work that was "limited to simple and routine tasks."  (*Id.*, PageID.64-65).  Lowe's argument that the RFC failed to account for her mental condition runs contrary to caselaw.  For example, in *Trejo v. Comm'r of Soc. Sec*, No. 16-11537, 2017 WL 4925691, *8 (E.D. Mich. May 10, 2017), *report and recommendation adopted*, 2017 WL 3768943 (E.D. Mich. Aug. 31, 2017), the magistrate judge found that, in formulating the

plaintiff's RFC, the ALJ "appropriately considered his mental impairment, as she specifically limited [the plaintiff] to no more than simple, routine, repetitive tasks in an environment involving no more than occasional and superficial interaction with the public or coworkers, and to low-stress, routine, and predictable work 'in light of his mild depressive symptoms and his pain.' "  Similarly, in *Alvarado v. Comm'r of Soc. Sec.*, No. 20-11717, 2021 WL 1398229, *11, *13 (E.D. Mich. Feb. 18, 2021), *report and recommendation adopted*, 2021 WL 1387780 (E.D. Mich. Apr. 13, 2021), the magistrate judge found, relying on *Trejo*, that "[p]laintiff [could not] argue that the ALJ failed to analyze [p]laintiff's mental condition and is due remand, under *Reynolds v. Comm'r of Soc. Sec*, 424 F. App'x 411, 416 (6th Cir. 2011), precisely because the ALJ in fact included the mental limitation of simple routine repetitive tasks" and that "the ALJ's assessed limitation to simple, routine, repetitive tasks is in accord with a moderate limitation in ability to concentrate or maintain attention."  Here, like in *Trejo* and *Reynolds*, the RFC contains language limiting work to simple, routine, and repetitive tasks.  This limitation is consistent with the ALJ's finding that Lowe had "a moderate limitation" "[w]ith regard to concentrating, persisting, or maintaining pace."  (*Id.*, PageID.64).

Lowe relies on *Brown v. Comm'r of Soc. Sec.*, 672 F. Supp. 2d 794 (E.D. Mich. 2009), to argue that a remand is necessary here.  In *Brown*, the court

concluded "that the ALJ's hypothetical question did not accurately describe [p]laintiff's psychological impairment with respect to concentration because it does not reflect the frequency of the impairment," and, accordingly, that a remand was necessary. *Id*. at 797. Lowe, however, does not appear to argue that the ALJ's hypothetical question inaccurately described her psychological impairment. Her contention is seemingly only that the RFC fails to include sufficient limitations. As such, *Brown* is not on point.

Lowe also relies on *Bellman v. Comm'r of Soc. Sec.,* No.18-10872, 2019 WL 1521994, at *8 (E.D. Mich. Mar. 20, 2019), *report and recommendation adopted*, 2019 WL 1515258 (E.D. Mich. Apr. 8, 2019), wherein the court stated that "[b]ecause there is no bright-line rule requiring an ALJ to account for moderate limitations in CPP in a certain way, the Court must – given the particular evidence in the case at hand – determine whether the limitations imposed by the ALJ adequately accounted for the claimant's moderate restriction in CPP." *Bellman* is consistent with the undersigned's earlier analysis under *Trejo* and *Reynolds*. As *Bellman* says, there is no bright-line rule requiring an ALJ to account for moderate limitations in concentration, persistence, and pace in a particular manner, and the undersigned, after considering the particular evidence in this case, has determined that the limitations in the RFC adequately account for Lowe's moderate restrictions in concentration, persistence, and pace.

Lowe also argues that the RFC failed to account for a 2018 psychological examination which noted that Lowe had a "very short attention span" and "easy distractibility."  However, upon examination of the section in the written determination explaining the RFC it is clear that the ALJ considered Lowe's mental health treatment records.  (*Id.*, PageID.67-68).  Yet, after consideration of the records, the ALJ found that "although continued mental health treatment was recommended, there was no finding that [Lowe's] depression prevented her from working or functioning."  (*Id.*, PageID.68).  Ultimately, Lowe's arguments that the RFC needed to include additional limitations are unpersuasive.  Thus, Lowe is not entitled to a remand on this issue.

## VI.   Conclusion

For the reasons set forth above, it is RECOMMENDED that the Commissioner's motion be GRANTED, Lowe's motion be DENIED, and that under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

Dated: June 30, 2021                              s/Kimberly G. Altman
Detroit, Michigan                                 KIMBERLY G. ALTMAN
                                                  United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2021.

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager